UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| CASE NO.: CV 11-07963 SJO (CWx) | DATE: April 5, 2012 |
| TITLE: Azita Zendel v. Circle Location Services, Inc., et al. | |

========================================================================
PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS** (in chambers): **ORDER GRANTING IN PART AND DENYING IN PART CERTAIN DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** [Docket No. 52]; **ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION TO CONTINUE THE HEARING AND FILE A SURREPLY** [Docket No. 63]

This matter is before the Court on the Motion to Dismiss the First Amended Complaint ("Motion") filed on February 28, 2012, by the following defendants: (1) Circle Location Services, Inc. (Delaware corporation); (2) Reveille, LLC; (3) Salma Hayek; (4) Ben Silverman; (5) Tracy Poust; (6) Marco Pennette; (7) Chris Black; (8) Veronica Becker; (9) Oliver Goldstick; (10) Richard Heus; (11) 1898 Holdings, LLC (as successor-in-interest to The William Morris Agency, Inc.); (12) Teri Weinberg; (13) Samantha Thomas; (14) Gabrielle Stanton; and (15) Mark Baker (collectively, "2011 Defendants"). The 2011 Defendants assert that the doctrine of *res judicata* bars Plaintiff Azita Zendel ("Plaintiff") from bringing the instant action against them. On March 19, 2012, Plaintiff filed an Opposition to the Motion ("Opposition"), and on March 22, 2012, she filed a Notice of Errata to the Opposition ("Errata").[1] The 2011 Defendants filed a Reply ("Reply") on March 26, 2012. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for April 9, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons the Court **GRANTS IN PART AND DENIES IN PART** the Motion.

On March 29, 2012, Plaintiff filed an Ex Parte Application to Continue the Hearing on this Motion and for Leave to File a Surreply ("Ex Parte Application"). The 2011 Defendants filed an Opposition on April 3, 2012. The Court finds that the information and allegations contained in Plaintiff's proposed Surreply (ECF No. 63) are not necessary to decide the issues presented in the Motion and **DENIES** the Ex Parte Application on that basis.

---

[1] Plaintiff inadvertently filed an incomplete copy of her Opposition with the Court. (Errata 1, Mar. 22, 2012, ECF No. 56.) As filed on March 20, 2012, Plaintiff's Opposition is missing six pages. (*See generally* Errata.) Together, Plaintiff's Opposition and Errata exceeds the twenty-page limit allowed for oppositions per the Court's standing order. (*See* Initial Standing Order ¶ 19, Sept. 28, 2011, ECF No. 5.)

I.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, representing herself *pro se*, alleges the following facts. Plaintiff is an author with various works registered with the United States Copyright Office. (First Am. Compl. ("2011 FAC") ¶ 26, Nov. 28, 2011, ECF No. 12.) Plaintiff's works include screenplays, films, and music compositions. (2011 FAC ¶ 26.) Between 1997 and 2006, Plaintiff submitted various pieces of her copyrighted works to some or all of the defendants "for possible representation, casting, purchase, financing, production and/or distribution." (2011 FAC ¶ 29.) The defendants declined the opportunity to purchase, use, or adapt Plaintiff's works. (2011 FAC ¶ 34.)

The defendants in this lawsuit are the producers, licensors, broadcasters, and distributors of the television series *Ugly Betty*. (2011 FAC ¶ 35.) Plaintiff alleges that *Ugly Betty* contains substantial similarities to her copyrighted works. (*See generally* 2011 FAC.) Plaintiff has filed two successive lawsuits to recover for the alleged copyright infringement.

On April 19, 2010, Plaintiff filed the first action attempting to recover for the alleged copyright infringement in *Ugly Betty*. (Case No. 2:10-CV-2889, ECF No. 1.) Plaintiff's Second Amended Complaint ("2010 SAC"), filed on May 27, 2011, controlled the first lawsuit ("2010 Action"). (*See generally* Defs.' Req. for Judicial Notice ("RJN") Ex. 1 ("2010 SAC"), Dec. 22, 2011, ECF No. 17.) The 2010 SAC stated the following causes of action: (1) copyright infringement under 17 U.S.C. § 101; (2) permanent injunction; and (3) declaratory injunction. (*See generally* 2010 SAC.) The court found that Plaintiff engaged in "willful, repeated, bad faith discovery abuse," and sanctioned Plaintiff with dismissal of the 2010 Action with prejudice on September 15, 2011. (RJN Ex. 4.)

The 2010 Action named the following defendants: (1) ABC Video Productions, Inc.; (2) Touchstone Television Productions, LLC; (3) Reveille Independent, LLC (formerly, Reveille, LLC); (4) Ventanarosa Productions, Inc.; (5) Silent H. Productions, Inc.; (6) Disney Enterprises, Inc. (California corporation); (7) Disney Enterprises, Inc. (Delaware corporation); (8) Buena Vista International, Inc.; (9) Buena Vista Home Entertainment, Inc.; (10) ABC, Inc.; (11) American Broadcasting Companies, Inc.; (12) Disney Incorporated, Inc.; (13) Disney Entertainment Productions, Inc.; (14) Silvio Horta; (15) ABC Studios; and (16) Disney-ABC Entertainment Group (collectively "2010 Defendants"). (*See generally* 2010 SAC.)

Less than two weeks after judgment was entered dismissing the 2010 Action with prejudice, Plaintiff filed a new lawsuit - the instant lawsuit - on September 26, 2011. (Case No. 2:11-CV-07963, ECF No. 1.) On November 28, 2011, Plaintiff filed the 2011 FAC. The 2011 FAC is the controlling complaint for this second lawsuit ("2011 Action"). The 2011 FAC alleges the following causes of action: (1) copyright infringement under 17 U.S.C. § 101; (2) permanent injunction; and (3) declaratory injunction. (*See generally* 2011 FAC.)

The 2011 Action names the following defendants, none of whom is nominally identical to any of the 2010 Defendants: (1) Circle Location Services, Inc. (Delaware corporation); (2) Circle Location Services, Inc. (California corporation)[2]; (3) Reveille, LLC; (4) The Walt Disney Company, Inc. (California corporation)[3]; (5) The Walt Disney Company, Inc. (Delaware corporation)[4]; (6) Salma Hayek; (7) Ben Silverman; (8) Tracy Poust; (9) Marco Pennette; (10) Chris Black; (11) Veronica Becker; (12) Oliver Goldstick; (13) Richard Heus; (14) The William Morris Agency; (15) Teri Weinberg[5]; (16) Samantha Thomas; (17) Gabrielle Stanton; and (18) Mark Baker. (*See generally* 2011 FAC.)

The defendants filed a Motion to Dismiss the 2011 Action ("First MTD") on December 22, 2011. In the First MTD, Defendants asserted that the doctrine of *res judicata* barred Plaintiff from bringing the 2011 Action. (*See generally* First MTD, Dec. 22, 2011, ECF No. 16.) The Court denied the First MTD. (*See generally* Feb. 2, 2012 Order 10, ECF No. 49.) The Court held that the defendants proved that the 2010 Action was a final judgment on the merits and that there was an identity of claims between the two actions, but that the defendants failed to establish privity. (Feb. 2, 2012 Order 7-10.) The Court invited the defendants to bring a motion for judgment on the pleadings if they believed that they could establish privity. (Feb. 2, 2012 Order 10.) The instant Motion is their attempt to establish privity between the 2010 Defendants and the 2011 Defendants.[6] Because the time to file motions to dismiss has passed, *see* Fed. R. Civ. P. 12, the Court converts the instant Motion into a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

///

///

---

[2] Defendants and Plaintiff stipulate that 2011 Defendant Circle Location Services, Inc., a California corporation, does not exist as a California corporation. (Joint Stipulation to Extend Time to Respond to FAC ("Stipulation") 1, Feb. 14, 2012, ECF No. 50.)

[3] Defendants and Plaintiff stipulate that 2011 Defendant The Walt Disney Company, Inc., a California corporation, does not exist as a California corporation. (Stipulation 1.)

[4] The Walt Disney Company asserts that it was erroneously named and sued as The Walt Disney Company, Inc., a Delaware corporation. (Answer to 2011 FAC ("Answer") 1, Feb. 28, 2012, ECF No. 51.)

[5] Erroneously sued as Terry Weinberg.

[6] Although joined in the Motion, 2011 Defendant The Walt Disney Company does not assert that it is in privity with any of the 2010 Defendants. Instead, The Walt Disney Company answered Plaintiff's 2011 FAC on February 28, 2012. (*See generally* Answer.)

## II. DISCUSSION

### A. Legal Standard for Motion for Judgment on the Pleadings

In ruling on a motion for judgment on the pleadings, the Court must accept as true all of the factual allegations in the complaint and construe them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.*

### B. *Res Judicata*

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Pursuant to Federal Rule of Civil Procedure 8(c), the doctrine of *res judicata* is an affirmative defense. Fed. R. Civ. P. 8(c). Thus, the party raising the defense - typically, the defendant - has the burden of proof. *Mack v. Kuckenmeister*, 619 F.3d 1010, 1016 (9th Cir. 2010). *Res judicata* operates to "preclud[e] parties from contesting matters that they have had a full and fair opportunity to litigate." *Taylor,* 553 U.S. at 892 (internal quotation marks omitted); *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011). "[A] final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotation marks omitted). A successful defense under the doctrine requires: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Id.* (internal quotation marks omitted).

#### 1. "Same Parties" or "In Privity" Requirement

A fundamental tenet of *res judicata* is that a prior judgment binds and benefits only the parties to the previously decided action. *See Taylor*, 553 U.S. at 884. However, a number of exceptions "temper this basic rule," allowing the doctrine of *res judicata* to attach to those in privity with the parties to the initial action. *Id.* While no bright-line definition governs the privity exception, the Supreme Court has identified six general categories. *Id.* at 893-95. Privity may exist between a party and a nonparty where: (1) the nonparty contractually agrees to be bound by the judgment; (2) there is a "substantive legal relationship[]"; (3) the party "adequately represented" the nonparty's interests; (4) the nonparty assumed control over the initial litigation; (5) the nonparty is now relitigating as a proxy for the party; and (6) a statute prohibits "successive litigation by nonlitigants." *Id.* at 893-95.

The 2011 Defendants argue that all of the 2011 Defendants are in privity with at least one of the 2010 Defendants such that the 2011 Defendants should obtain the benefit of the dismissal of the 2010 Action even though they were not parties to that action. (*See generally* Mot.) The 2011 Defendants contend that each of the 2011 Defendants has one of the following relationships

with one or more of the 2010 Defendants: (1) Parent/Wholly-Owned Subsidiary; (2) Employer and Employee or Independent Contractor; (3) Principal/Agent; (4) Predecessor/Successor-in-Interest to Property; or (5) Closely-Held Corporation/Sole Shareholder.  The Court will analyze each of these relationships to determine whether they give rise to privity as a matter of law and, if so, whether the 2011 Defendants have established as a factual matter that the relationship actually exists between them and the 2010 Defendants.

### a. Parent / Wholly-Owned Subsidiary

The 2011 Defendants assert that 2011 Defendant **Circle Location Services, Inc.**, is a wholly-owned subsidiary of 2010 Defendant **Disney Enterprises, Inc.** (Mot. 9, 18.)  In light of their parent/wholly-owned subsidiary relationship, the 2011 Defendants claim that "Circle [Location Services, Inc., has] not engaged in production of any programs different from those produced and distributed by [Disney Enterprises, Inc.] and is being used as a proxy for suing the original defendants."  (Mot. 18.)  Accordingly, the 2011 Defendants aver that privity exists between 2010 Defendant Disney Enterprises, Inc., and 2011 Defendant Circle Location Services, Inc., and thus, the doctrine of *res judicata* precludes Plaintiff from bringing suit against Circle Location Services, Inc., in the 2011 Action.  (*See* Mot. 9, 18.)

The Court agrees that privity exists between a parent corporation and its wholly-owned subsidiary. *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 728 (9th Cir. 1991); *see also Pickman v. Am. Express Co.*, No. 11-CV-05326, 2012 WL 258842, at *5 (N.D. Cal. Jan. 27, 2012).

Factually, the 2011 Defendants offer the Declaration of Marsha Reed ("Reed Declaration") to support their assertion that Circle Location Services, Inc., is a wholly-owned subsidiary of Disney Enterprises, Inc.  (*See generally* Reed Decl. in Supp. of Mot., Feb. 28, 2012, ECF No. 52-12.)  However, as noted by Plaintiff in her Opposition, the Reed Declaration attests that Circle Location Services, Inc., is a wholly-owned subsidiary of Disney **Entertainment**, Inc., not Disney **Enterprises**, Inc.  (Reed Decl. ¶¶ 1, 8.)  This discrepancy is of great consequence because Disney Entertainment, Inc. was not a defendant in the 2010 Action;  Disney **Enterprises**, Inc. was the defendant in the 2010 Action.  Therefore, even if privity exists between Circle Location Services, Inc., and Disney Entertainment, Inc., this would not satisfy the third prong of *res judicata*, as privity must be between the party to the second lawsuit and a party to the first lawsuit.

On Reply, the 2011 Defendants present a second Declaration from Marsha Reed ("Second Reed Declaration") wherein Ms. Reed retracts her earlier declaration and declares that Disney Entertainment, Inc., does not exist and that she meant to write Disney Enterprises, Inc., in her first declaration. (Second Reed Decl. ¶¶ 4-5, Mar. 26, 2012, ECF No. 57-2.)

This discrepancy between the two declarations highlights a problem that permeates the 2011 Defendants' Motion.  It is clear from the two rounds of briefing and all of the documents

submitted that the Disney corporate family is comprised of a variety of distinct legal entities who are related to each other in complicated (and at times convoluted) ways. If the relationships between the entities cannot even be kept straight by the high level officers such as Ms. Reed and the attorneys who are defending this action, the Court is reluctant to find that privity exists between any two entities absent clear, unambiguous proof. How is Plaintiff supposed to counter the 2011 Defendants' assertions of privity if the relationships the 2011 Defendants allege are constantly changing? In light of the contradictory Reed Declarations and the fact that the initial Reed Declaration was insufficient to establish privity, the Court finds that privity has not been established between 2011 Defendant Circle Location Services, Inc., and 2010 Defendant Disney Enterprises, Inc. The Motion is **DENIED** with respect to 2011 Defendant Circle Location Services, Inc.

b.  Independent Contractors or Employer / Employee

The 2011 Defendants assert that privity "exists between employees and their former employer when the liability of the employer is allegedly based upon the acts of the employee." (Mot. 8.) The 2011 Defendants assert that the following 2011 Defendants: (1) Ben Silverman, (2) Tracy Poust, (3) Marco Pennette, (4) Chris Black, (5) Veronica Becker, (6) Oliver Goldstick, (7) Richard Heus, (8) Teri Weinberg, (9) Samantha Thomas, (10) Gabrielle Stanton, and (11) Mark Baker (collectively, "Individual Defendants") are in privity with **Touchstone Television Pictures, LLC** because they rendered services to Touchstone Television Pictures, LLC, as either an employee or an independent contractor. (Mot. 8-16.) The 2011 Defendants assert that Touchstone Television Pictures, LLC, was dismissed in the 2010 Action, and therefore *res judicata* should bar the 2011 Action against all the Individual Defendants. (Mot. 12.)

As a legal matter, the issue of *res judicata* between an employer and an employee is not quite as generous as the 2011 Defendants have described it.

> Where . . . the relations between two parties are analogous to that of principal and agent, the rule is that a judgment in favor of either, in an action brought by a third party, **rendered upon a ground equally applicable to both**, is to be accepted as conclusive against the plaintiff's right of action against the other.

*Spector v. El Ranco, Inc.*, 263 F.2d 143, 145 (9th Cir. 1959) (emphasis added); *see also* Restatement (Second) of Judgments § 51 (1982).

Because the 2010 Action was dismissed for Plaintiff's discovery abuses, the judgment cannot be deemed to have been entered "on a ground applicable to both" the employer (Touchstone Television Pictures, LLC) and the employees (Individual Defendants). Thus, *res judicata* would not bar this action against the Individual Defendants even if the 2011 Defendants established that the Individual Defendants were employees of one of the 2010 Defendants.

But the 2011 Defendants' argument with respect to employer/employee relationships suffers from an even bigger flaw. Once again, the 2011 Defendants cannot keep their own entities straight. Touchstone Television **Pictures**, LLC, was not a party to the 2010 Action. Touchstone Television **Productions**, LLC, was a defendant in the 2010 Action. (*See generally* RJN Ex. 1.) The 2011 Defendants' briefing and declarations refer to the following entities: (1) Touchstone Television **Productions, LLC** (*see* Mot. 9-12); (2) Touchstone Television **Pictures, LLC** (*see* Mot. 12:10-13, 13:15); and (3) Touchstone Television **Productions, LLP** (*see* Decl. of Milinda McNeely in Supp. of Mot. ("McNeely Decl.") ¶ 1, Feb. 28, 2012, ECF No. 52-8). Besides having the same derivative name (Touchstone), the 2011 Defendants offer the Court no evidence regarding the corporate structure and affiliations of 2010 Defendant Touchstone Television Productions, LLC. It is not clear if the three entities listed above are the same entity, but the 2011 Defendants were sloppy with how they referred to it, or if they are three separate entities, in which case the 2011 Defendants would need to explain how these entities are related to one another and to the Individual Defendants. Ms. McNeely is Deputy Chief Counsel of this entity (whatever its proper name is). (McNeely Decl. ¶ 1.) Once again, if the high level officers and the lawyers defending this action cannot keep their entities straight, the Court will not go wading into the quagmire of legal relationships of the Disney corporate family to root out any potential privity relationships.[7]

As before, the Court is not moved by the 2011 Defendants' claim that the **numerous** inconsistencies are merely the "product of an error by counsel." (Reply 1, Mar. 26, 2012, ECF No. 57.) Plaintiff is not given a meaningful chance to rebut the 2011 Defendants' contentions if the contentions she is expected to contest are constantly changing. Notwithstanding the 2011 Defendants' argument that the underlying contracts contained in the Compendium - consisting of 1,059 **unnumbered** pages - resolve any inconsistencies in their briefs (Reply 1-2), the Court finds that the 2011 Defendants have failed to establish privity between the Individual Defendants and any of the 2010 Defendants.[8] Accordingly, the Motion is **DENIED** as to: (1) Ben

---

[7] The quagmire is not just the complicated legal relationships at the Disney family of entities. The 2011 Defendants' submissions to the Court attempting to establish privity are also a quagmire. The 2011 Defendants submitted a compendium of exhibits consisting of **1,059 unnumbered pages** for the Court to wade through. Not only were the pages unnumbered, but there were no tabs in the hard copy separating one exhibit from another. In the future, the Court orders the 2011 Defendants to comply with Local Rule 11-5.3. Under Local Rule 11-5.3, "exhibit number[s] shall be placed immediately above or below the page number on each page of the exhibit" and "[e]xhibits shall be tabbed in sequential order." C.D. Cal. R. 11-5.3.

[8] Further weakening the 2011 Defendants' argument is that they are not clear on whether the Individual Defendants were **employees** of Touchstone (the ambiguous entity) or **independent contractors**. (Mot. 10-12.) The 2011 Defendants seem to suggest that the privity analysis would be identical regardless of whether they were employees or

Silverman, (2) Tracy Poust, (3) Marco Pennette, (4) Chris Black, (5) Veronica Becker, (6) Oliver Goldstick, (7) Richard Heus, (8) Teri Weinberg, (9) Samantha Thomas, (10) Gabrielle Stanton, and (11) Mark Baker.

        c.      Principal / Agent

The 2011 Defendants argue that based on a principal/agent relationship of privity, 2011 Defendant **1898 Holdings, LLC**, is in privity with 2010 Defendant Touchstone Television Productions, LLC. (Mot. 11.)  The 2011 Defendants provide a declaration that:

> WME [William Morris Endeavor Entertainment, LLC] was formed in 2009 as part of the merger between William Morris Agency, LLC and The Endeavor Agency, LLC.  Also as part of the merger, the former William Morris Agency, LLC changed its name to 1898 Holdings, LLC and became a majority owner of interests in WME.  William Morris Agency, Inc. is a predecessor entity to William Morris Agency, LLC.

(Decl. of Tom McGuire ("McGuire Decl.") in Supp. of Mot. ¶ 5, Feb. 28, 2012, ECF No. 52-7.)  The 2011 Defendants assert that William Morris Agency, Inc., was an agent for RCN International Distribution, LLC, whose "television property" included format rights for *Betty La Fea* ("*Betty La Fea* Format Rights"), which was a Columbian television series.  (Mot. 16-17.)  The *Betty La Fea* Format Rights were assigned as follows: RCN International Distribution, LLC, to Universal Network Programming, LLC; Universal Network Programming, LLC, to its successor-in-interest, NBC Studios, Inc.; NBC Studios, Inc., to 2011 Defendant Reveille, LLC; and Reveille, LLC, to 2010 Defendant Touchstone Television Productions, LLC.  (Decl. of Lee Rierson in Supp. of Mot. ("Rierson Decl.") ¶ 8, Feb. 28, 2012, ECF No. 52-13.)  The 2011 Defendants aver that  William Morris Agency, Inc., is in privity with Touchstone Television Productions, LLC, because it "retained its agency relationship with the seller of the Format Rights" through the aforementioned chain of assignments.  (Mot. 18.)

A principal and its agent are in privity with one another, but this rule is subject to the same limitation as the rule applying to employers and employees - the judgment must be rendered on a ground applicable to both.  *Spector*, 263 F.2d at 145 ("Where, as here, the relations between two parties are analogous to that of principal and agent, the rule is that a judgment in favor of either, in an action brought by a third party, **rendered upon a ground equally applicable to both**, is to be accepted as conclusive against the plaintiff's right of action against the other" (emphasis added)).  Because the 2010 Action was dismissed with prejudice for Plaintiff's discovery abuses, this dismissal was not on a ground applicable to any party other than the named 2010 Defendants.

---

independent contractors.  The Court is not convinced.

And, once again, the 2011 Defendants do not know their own entities, as they at times argue that 2011 Defendant 1898 Holdings, LLC, is in privity with Touchstone Television **Pictures**, LLC (*see* Mot. 18), which was not a party to the 2010 Action.

Finally, even assuming that the 2011 Defendants had stayed consistent and referred only to Touchstone Television **Productions**, LLC, throughout their submission, the relationship the 2011 Defendants describe between 1898 Holdings, LLC, and Touchstone Television Productions, LLC, is so attenuated that privity would not be established. Privity is not a transferrable legal right that flows with the assignment of format rights for a television show. As RCN International Distribution, LLC's agent, William Morris Agency, Inc., was in privity with RCN International Distribution, LLC; William Morris Agency, Inc., was **not** in privity with the *Betty La Fea* Format Rights. William Morris Agency, Inc.'s agency relationship with RCN International Distribution, LLC, does **not** establish privity between William Morris Agency, Inc., and every successor-in-interest to the *Betty La Fea* Format Rights (*e.g.*, Touchstone Television Productions, LLC). The 2011 Defendants must provide evidence of a privity relationship between one of the 2011 Defendants and one of the 2010 Defendants, not merely point out the obvious, which is that everyone had their hands on the *Ugly Betty* project at one point or another.

Because the 2011 Defendants fail to establish privity, the Motion is **DENIED** as to 1898 Holdings, LLC (as successor-in-interest to William Morris Agency, Inc.).

        d.     <u>Successor-in-Interest to Property</u>

The 2011 Defendants assert that privity exists between 2011 Defendant **Reveille, LLC**, and 2010 Defendant **Touchstone Television Productions, LLC**, as successor-in-interest of the *Betty La Fea* Format Rights. (Mot. 9, 18.) The 2011 Defendants declare that Reveille, LLC, perfected ownership of the *Betty La Fea* Format Rights by way of the aforementioned chain of assignments. (Rierson Decl. ¶ 8.)

As pointed out by Plaintiff, the *Betty La Fea* Format Rights are **not** at stake in the instant action. (Opp'n 17-18.) Rather, the instant action centers on a copyright infringement claim by *Ugly Betty*, **not** the Columbian televison series, *Betty La Fea*. The *Betty La Fea* Format Rights include the "right to release, exploit, advertise, distribute . . . sell and perform any derivative work" based on *Betty La Fea*. (Mot. 17.) The fact that the 2011 Defendants had the right to exploit the *Betty La Fea* Format Rights for United States television appears to be undisputed. The dispute in this case is whether the 2011 Defendants infringed on Plaintiff's copyrights as they did so.

Perhaps the 2011 Defendants seek to raise their ownership interest in the *Betty La Fea* Format Rights as a defense to Plaintiff's copyright infringement claim. The 2011 Defendants would like the Court to believe that ownership of the *Betty La Fea* Format Rights provides the 2011 Defendants with immunity from suit by authors of independent works alleging copyright

infringement with respect to *Ugly Betty*. However, as 2011 Defendant The Walt Disney Company admitted in its Answer, *Ugly Betty* is only based **in part** on *Betty La Fea*. (Answer ¶ 49.) It is certainly possible that the 2011 Defendants could have had full right to exploit the *Betty La Fea* Format Rights and still infringed on another author's copyrights in producing and distributing the television series *Ugly Betty*. Although 2011 Defendant Reveille, LLC, and 2010 Defendant Touchstone Television Productions, LLC, might be in contractual privity with respect to the *Betty La Fea* Format Rights, the 2011 Defendants do not establish that the two entities are successors-in-interest to the property at issue in the instant action: *Ugly Betty*.

Further dooming the 2011 Defendants' assertions is that, once again, they fluctuate between referring to Touchstone Television Productions, LLC (which was a 2010 Defendant), and Touchstone Television Pictures, LLC (which was not). (*See* Mot. 18.)

The Court **DENIES** the Motion with respect to 2011 Defendants Reveille, LLC.

e.   Sole Shareholder

The 2011 Defendants assert that a "commonality of interest" exists between an entity and its sole (or majority) shareholder such that privity runs between them. (Mot. 7-8.) Factually, they attest that 2011 Defendant **Salma Hayek** is the "President and sole shareholder" of 2010 Defendant **Ventanarosa Productions, Inc**. (Decl. of William Sobel in Supp. of Mot. ("Sobel Decl.") ¶ 6, Feb. 28, 2012, ECF No. 52-14.) In her capacity as President and sole shareholder of Ventanarosa Productions, Inc., Hayek retains full control over all corporate finances. (Sobel Decl. ¶ 6.) In light of the corporate/sole-shareholder privity relationship between Hayek and Ventanarosa Productions, Inc., the 2011 Defendants aver that the doctrine of *res judicata* precludes Plaintiff from bringing suit against Hayek. (*See* Mot. 9, 16.)

"When a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest" to establish privity. *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983); *see also W. Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (finding privity existed between a corporation and its president where the president was "deeply involved and fully informed" with respect to corporate affairs). Public policy supports finding that privity runs between "a close corporation and its sole or controlling stockholder." *Goodman Ball, Inc. v. Mach II Aviation, Inc.*, No. 10-CV-01249, 2010 WL 4807090, at *5 (N.D. Cal. Nov. 19, 2010).

The relationship between Hayek and Ventanarosa Productions, Inc., is the one relationship the 2011 Defendants point to that both matches a relationship the law recognizes as one of privity and is not riddled with sloppy declarations and confusing corporate relationships. Plaintiff sued Ventanarosa Productions, Inc., in the 2010 Action and lost. (*See* RJN Ex. 1.) Hayek is the president and sole shareholder of Ventanarosa Productions, Inc. (Sobel Decl. ¶ 6.) The law

recognizes that privy exists between a closely-held corporation and its sole or controlling shareholder. *Goodman Ball*, 2010 WL 4807090, at *5. Accordingly, *res judicata* bars the 2011 Action as to 2011 Defendant Hayek.

Plaintiff challenges the sufficiency of the Sobel Declaration to explain the relationship between Hayek and Ventanarosa Productions, Inc. (Opp'n 16.) Plaintiff "does not believe" that Sobel can "competently" attest to Hayek's ownership of Ventanarosa Productions, Inc. just because he is Hayek's attorney. (Opp'n 16.) Accordingly, Plaintiff argues that the instant Motion must be converted to a motion for summary judgment and that she must be afforded due time to conduct discovery. (*See* Opp'n 16-17.) Conversion of the instant Motion to a motion for summary judgment is not appropriate because Plaintiff does not challenge the facts to which Sobel attests - that Hayek is the President and sole shareholder of Ventanarosa Productions, Inc. (*See* Opp'n 16-17.) Rather, Plaintiff challenges the **sufficiency** of the Sobel Declaration as evidence. (*See* Opp'n 16-17.) Sobel declares that as counsel to both Hayek and Ventanarosa Productions, Inc., he has personal knowledge of Ventanarosa Productions, Inc.'s corporate structure. (Sobel Decl. ¶ 5.) The Court does not believe that the only person competent to testify as to the relationship between Hayek and Ventanarosa Productions, Inc., is Hayek herself. Her attorney is competent to testify to that relationship, so Plaintiff's evidentiary objection is overruled. Because Plaintiff does not even allege that the relationship between 2011 Defendant Hayek and 2010 Defendant Ventanarosa Productions, Inc., is anything other than sole-shareholder/company, the Court need not convert this Motion to a motion for summary judgment. The Court **GRANTS** the Motion with respect to 2011 Defendant Salma Hayek.

    C.    <u>Concluding Remarks</u>

The 2010 Defendants successfully obtained a dismissal with prejudice of the 2010 Action on the basis of Plaintiff's discovery abuses in that case. Although this decision was technically "on the merits" for the purposes of *res judicata*, the 2010 Action did not actually **reach** the merits of the underlying allegation - whether *Ugly Betty* infringed Plaintiff's copyrights. If the 2010 Action had reached the merits and determined that the television show *Ugly Betty* did not infringe on Plaintiff's copyrights, the instant case could have been easily disposed of, as the ruling could have been used, not as *res judicata*, but as collateral estoppel against Plaintiff.

But the 2010 Action did not reach those merits. No judicial finding has ever been made regarding whether *Ugly Betty* infringes Plaintiff's copyrights. Through both the First Motion to Dismiss and the instant Motion, the 2011 Defendants have tried to gain the benefit of the dismissal of the 2010 Action despite the fact that none of the 2011 Defendants were party to the 2010 Action.

If the 2011 Defendants were in privity with the 2010 Defendants, this gambit would have worked, and indeed, the Court has held that the argument is successful as to 2011 Defendant Salma Hayek, whose relationship with 2010 Defendant Ventanarosa Productions, Inc., is straightforward. The relationships between all of the other defendants is a complicated web that not even

defendants themselves seem to be able to keep straight. The Court does not mean to suggest that if a corporate family contains a variety of entities related to each other in complicated ways that privity never exists between its various entities. But particularly where the corporate structure is convoluted, the party seeking to assert *res judicata* must present **clearly** to the Court how all of the entities relate to each other, both so that the Court is capable of analyzing whether privity exists and so that the party opposing *res judicata* has a meaningful opportunity to argue against imposition of *res judicata*.

Here, not only were the 2011 Defendants' explanations of the corporate relationships muddied, but the relationships that purportedly gave rise to privity were, in some instances, so attenuated that the 2011 Defendants often tested the credulity of the Court. The most egregious example is the alleged relationship between 2011 Defendant 1898 Holdings, LLC, and Touchstone Television Productions (or Pictures?), LLC. The 2011 Defendants seem to believe that because other entities who worked on *Ugly Betty* obtained a dismissal of the 2010 Action for discovery violations, *res judicata* means that no entity related to the *Ugly Betty* project should ever have to defend against one of Plaintiff's lawsuits again. This is not the law.

In short, the Court believes that the 2011 Defendants needlessly exhausted the Court's time by attempting to dismiss this case on *res judicata* grounds rather than simply defend the case on the merits. Determining whether the television show *Ugly Betty* actually infringes Plaintiff's copyrights is a simple matter of reviewing the *Ugly Betty* series, reviewing Plaintiff's copyrighted works, and analyzing whether they are substantially similar. The 2011 Defendants could have saved a few trees by defending this suit on the merits rather than trying (twice) to shoehorn all of the 2011 Defendants into a convoluted privity relationship with one or more of the 2010 Defendants.

III.    RULING

For the foregoing reasons this Court **GRANTS IN PART AND DENIES IN PART** the Motion as follows.

The Motion is **GRANTED** and the action is dismissed without leave to amend as to Defendant Salma Hayek. The Motion is **DENIED** with respect to all other 2011 Defendants. The remaining 2011 Defendants who have not already done so must file an Answer by April 16, 2012.

IT IS SO ORDERED.